J. A. BOTTS et al. v. WABASH RAILROAD COMPANY et al.; ST. LOUIS & HANNIBAL RAILWAY COMPANY, Appellant.

Division One, February 28, 1913.

APPELLATE JURISDICTION: Constitutional Question: Raised in Court Below and Abandoned on Appeal. An objection to the constitutionality of a statute made in the trial court, which is abandoned after an appeal is taken to the Supreme Court, or which is not attempted to be maintained either by argument or specification of the provision of the Constitution it violates, is

merely colorable, and does not invest the court with jurisdiction of the appeal. A litigant cannot foist jurisdiction upon the Supreme Court by asking an instruction declaring a certain statute in reference to venue to be unconstitutional and then after an appeal is allowed to the Supreme Court permitting that question to quietly pass out of the case.

Appeal from Audrain Circuit Court.—*Hon. James D. Barnett,* Judge.

TRANSFERRED TO ST. LOUIS COURT OF APPEALS.

*Fry & Rodgers* and *J. D. Hostetter* for appellant.

*W. W. Botts* and *P. H. Cullen* for respondents.

## STATEMENT BY THE COURT.

Plaintiffs were the joint owners of eighty-three hogs which they delivered to the St. Louis & Hannibal Railway at its station in Perry, Ralls county, Missouri, on the 21st day of March, 1907, and received from that corporation a shipping contract, whereby it was agreed that the hogs "together with the party or parties in charge thereof should be transported to Gilmore, Missouri," that being the terminus of the line of said railway; that the shipment was subject to minimum weights applying on cars of various lengths, as per tariffs and rules in effect on the date of the shipment, and through rate of freight from Perry, Missouri, the same being a special rate less than the regular tariff rate; that the live stock should be transported within a reasonable time and there delivered to the Wabash Railroad Company for further transportation to the consignees at the National Stock Yards in East St. Louis, Illinois. The contract further provided that the initial carrier should not be liable for any loss or damage beyond its own line and while said hogs were in its actual custody. It contained many other stipulations. There was evidence that the day in question was excessively warm for that time of the year, the thermometer ranging from 87 to

93 degrees. The transportation began about two or three o'clock in the afternoon and about four o'clock in the afternoon the shipment had reached Oakwood, a point on the main line of defendant road between Hannibal and Gilmore, where the stock was watered and the car containing them was picked up by the regular train, arriving at that point about five o'clock, for further transportation to Gilmore. The conductor of the regular train took two persons with him to examine the condition of the stock and discovered about twelve or thirteen of them had died. The car in which they were contained showed that it was wet and that they had been properly watered. They reached their point of destination through a connecting carrier at East St. Louis about eleven o'clock on March 22, 1907.

The consignees testified that they disposed of the dead hogs to a rendering company and the living hogs at the market price, and accounted to plaintiff for the proceeds.

The plaintiffs brought this action in two counts originally against defendant and the Wabash Railroad Company as connecting carrier. At the conclusion of the trial, the court required the plaintiffs to elect upon which count they would stand. Plaintiffs accordingly dismissed the first count and submitted their cause to the jury on the second count, which alleged that in violation of their agreement and in neglect of their duties as common carriers, the defendants failed to make delivery of said live stock within reasonable time and in as good condition as when received, thereby causing thirteen of said hogs to die, to the damage of plaintiffs in the sum of $300, for which judgment was prayed.

The answer of the Wabash Railroad Company was a general denial.

The answer of the St. Louis & Hannibal Railway Company contains a plea to the jurisdiction on the ground that no part of its line of railroad extended or

ran through Audrain county, Missouri, where this suit was begun, and that it kept no office in said county. It admitted the reception of the live stock mentioned in the petition, and set out in full the shipping contract under which the same was received, and insisted upon all the terms of said contract, and, among others, the rate of valuation therein fixed; and averred that the injury to the live stock was caused by the abnormal, unusual and sudden high temperature for that season of the year and not on account of any neglect on the part of defendant; that the plaintiffs had wholly failed to give a written notice of their claim verified by affidavit within seven days, as required in said shipping contract, or to have some one accompany the shipment of their live stock to feed, water and attend to them. Denied all other allegations of the petition. Issue was taken by reply. At the conclusion of the evidence, the court gave an instruction that there should be no recovery against the defendant Wabash Railroad Company; gave three instructions at the request of defendant St. Louis & Hannibal Railway Company submitting the question of its negligence; gave an instruction of its own motion to the jury as to the form of the verdict and as to the number who should concur therein. No instructions were requested by the plaintiffs.

The jury returned a verdict for plaintiffs against the St. Louis & Hannibal Railway for the sum of $151.80, from which it appealed to this court.

### OPINION.

BOND, J. (After stating the facts as above).—An examination of the entire record discloses that the theory of appellant on the trial below was, that no jurisdiction was acquired over it by the service of process in this case, for the reason that it had no railroad or business office in Audrain county, where this action was begun, and that the statute (R. S. 1909, sec. 5446) which

*Appellate Jurisdiction: Constitutional Question: Colorable.*

provides that suits against one or more connecting carriers may be prosecuted in any county in this State in which a suit against either of them might be maintained, is unconstitutional. We gather this from two of its instructions requested in the court below. If this statute is valid, then jurisdiction was rightfully acquired in the court below, because the record shows that the common carrier joined as a connecting carrier—Wabash Railroad—did have a line of railroad extending through Audrain county and kept a business office there; and, hence, the right to sue both of the defendants was within the provision of the above statute. Appellant has filed a brief in this court in which the only errors assigned are (1st) that no jurisdiction was acquired over it; (2nd) that the demurrer to the evidence should have been sustained in the court below; and (3rd) that the court erred in failing to direct the jury that plaintiffs were required to give the written notice specified in the shipping contract. The two latter assignments of error do not suggest any constitutional question, and in its brief in this court appellant does not suggest in the remotest way that any constitutional question arises upon its second and third assignments of error. All that is said in appellant's brief is, that the constitutionality of the statute under which this suit was brought was challenged below. The whole subject is then abandoned, and there is not another word nor an intimation in the brief and argument which suggests any reason why the aforesaid statute should be held unconstitutional. Counsel for appellant have thus left us in Cimmerian darkness as to why they think the statute obnoxious to the Constitution. If they considered the point to be *debatable,* it was their duty to make it on the submission of the case to this court. Instead, they have omitted to point to any provision of the Constitution of this State which is violated by the terms, intendment or effect of the statute in question. The conclusion

is irresistible that if they entertained that idea in the court below, they have not thought it worthy of presentation to this court. An objection to the constitutionality of a statute made in the trial court, which is abandoned after appeal taken to this court, or which is not attempted to be maintained either by argument or specification of the constitutional invalidity of such statute, is merely colorable and meritless; and if held sufficient ground to vest jurisdiction in this court, would necessarily divest courts of appeal of their lawful jurisdiction in any case where the counsel saw fit to make such claim during the trial. The appellate jurisdiction of the courts of appeal cannot be destroyed by the injection of sham questions of unconstitutionality in the trial courts, which are not deemed worthy of presentation or argument after the case has been gotten here by that process. That is what the record shows was done in this case. This performance does not present any real constitutional question for review in this court. This case is transferred to the St. Louis Court of Appeals. *Woodson, P. J., Lamm* and *Graves, JJ.,* concur.